**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA**

GALAHAD SMITH,                                                )
                                                             )
    Plaintiff,                                          )
                                                             )
                                                             )
v.                                                           )     Case No. 25 - 349 - TFM - B
                                                             )
                                                             )     *JURY TRIAL DAMANDED ON*
                                                             )     *ISSUES SO TRIABLE*
TRUSTMARK NATIONAL BANK,                                     )
A Foreign Corporation, and Fictitious                        )
Defendants "A", "B", "C", whether                            )
singular or plural, are those other                          )
persons, firms, corporations, or other                       )
entities whose wrongful conduct                              )
contributed to cause the injuries and                        )
damages to the Plaintiff, all of whose                       )
true and correct names are unknown                           )
to Plaintiff at this time, but will be                       )
substituted by amendment when                                )
ascertained.                                                 )
                                                             )
    Defendant,                                          )

---

## COMPLAINT

---

### STATEMENT OF THE PARTIES

1. Galahad Smith (Plaintiff) is an individual over the age of nineteen (19), an Alabama resident, and owns a home and property in Conecuh County, Alabama.

2. Trustmark National Bank (Defendant) is a foreign corporation doing business in Alabama.

3. Fictitious Defendants "A", "B", "C", are those other persons, firms, corporations, or other entities whose wrongful conduct contributed to cause the injuries and

damages to the Plaintiff, all of whose true and correct names are unknown to

Plaintiff at this time, but will be substituted by amendment when ascertained.

## JURISDICTION AND VENUE

### JURISDICTION:

4. Pursuant to 28 U.S.C. § 1332 (a)(1), this Court has Original Jurisdiction through

   diversity. Trustmark National Bank is incorporated in the State of Mississippi, and

   its principal place of business being located at 248 E. Capitol St., Jackson, MS  39201.

   Furthermore:

   a. The amount in controversy exceeds Seventy-Five Thousand Dollars,

      ($75,000.00);

   b. The Parties are citizens of different states.

5. Jurisdiction is therefore proper.

### VENUE:

6. Pursuant to 28 U.S.C. § 1391(B)(2) Plaintiff resided and still owns property at 2065

   Bailey Rd., Evergreen, AL  36401 at the time of the initial damages. A substantial

   portion of the damages to Plaintiff occurred at this location.

7. Venue is therefore proper in this Court because its Geographic District embraces

   this location in Conecuh County.

## STATEMENT OF THE FACTS

8. In the year 2020, two contracts existed between Plaintiff and Trustmark National

   Bank. The first contract was a construction loan for the construction of a new home.

   The second contract was an executed interest rate lock in agreement for the

   permanent financing of the same home.

9.  Trustmark did advertise and promise to Plaintiff prior to signing the loan documents that the construction loan would be for eighty percent (80%) of the appraised value of the home, but incorrectly listed the principal amount on the pre-construction loan disclosures as approximately seventy percent (70%). When questioned by plaintiff, Trustmark promised to correct and/or modify the loan, and that the loan would indeed be 80% as promised. Trustmark did provide to Plaintiff a loan advancement worksheet and inspection results that expressly stated the loan amount as 80%, the subsequent disbursement matched the amounts stated on the loan advancement worksheet (given prior to the execution of the promissory note) to the penny.

10. As the home neared completion, an interest rate lock-in agreement was provide by Trustmark and fully executed. The interest rate locked in was 3.5%.

11. On or about April 23, 2020 Plaintiff discovered that the bank refused to provide Eighty Percent of the original appraisal which they previously promised to modify the agreement to furnish eighty percent (80%)

12. Plaintiff then repeatedly requested to increase the loan amount to eighty percent (80%) as they had promised to do, but Trustmark refused to do so, even though the loan worksheets, signed by the loan officer, indicated that the Plaintiff, Mr. Smith, was qualified and approved for a loan much higher than what was provided.

13. Trustmark Bank failed to send an adverse action notice related to this matter.

14. Plaintiff was forced to complete the construction with his own funding at the time when the COVID pandemic was at its peak. This shortfall of expected funding subsequently created significant financial hardship.

pg. 3

15. The construction loan matured on April 24, 2020, but because of the pandemic, Defendants mortgage department was working from home and was delayed in processing all closings. The Defendants underwriters worked on closing the loan through June of 2020.

16. This was two months after the maturity date of the loan. Near the end of June, Defendants notified Plaintiff in writing, that the Fannie Mae loan was denied, after being locked in.

17. The Defendants reason for denial of the permanent financing, was the credit report indicated a loan forbearance. There was no loan forbearance on the credit report. All mortgages and loans were reported as current on the credit report.

18. Upon denial of the Fannie Mae loan, Defendant, then simply modified the loan and termed it out at a much higher interest rate amortized for only 84 months.

19. It took Defendant's underwriters and additional one and a half months to prepare the documents for closing. Plaintiff paid interest for the construction loan for the three total months between when the construction loan matured and when the loan was termed out.

20. The modified loan was closed on August 25, 2020. Plaintiff immediately began to search for alternate financing, as the terms and interest rate of the in-house mortgage was unacceptable and unsustainable. A mortgage company was selected, who after reviewing Smith's financial statements, promised a fixed rate of 2.75%.

21. After the application process had begun, a credit report was pulled which indicated that Defendants had reported the three months between the construction loan

maturity date and the date of closing of the permanent financing as missed

payments, even though the interest was paid.

22. This negative reporting by the Defendants prevented the refinancing of the home at

the 2.75% rate. Plaintiff immediately contacted in writing and in person,  Mr.

Crenshaw, the local branch president, regarding the negative reports. Defendant

Crenshaw stated that he would not remove the negative reports.

23. As a result of the actions and wrongdoings of Trustmark Bank, Mr. Smith was

significantly damaged and retained an attorney on February 7, 2022 who promised

to recover the damages through litigation.

24. The attorney, Mr. Hays did file a complaint in State Circuit Court on April 21, 2022.

Defendants had the case removed to Federal Court in the Middle District Court of

Alabama.

25. There were 3 counts in the original lawsuit; Fraud, Breach of Contract, and Violation

of the FCRA.

26. After the initiation of the lawsuit, Mr. Hays, Plaintiff's Counsel, failed to properly

prosecute the lawsuit. Mr. Hays did not forward Plaintiff's demands to Defendants,

Did not serve any discovery requests to the Defendants, Hays did not notify Mr.

Smith of any discovery requests for the Defendants, even though Mr. Smith did

inquire multiple time of Mr. Hays if there were any outstanding discovery requests

that he should be aware of. Smith did send to Hays, emails on November 21, 2022

and on March 23, 2023 that stated in relevant part "*have they sent any*

*interrogatories*", and the latter email stated "*has the Defendant put forth any*

*interrogatories or requests for discovery*" Mr. Hays never responded to inquiries.

There were many more attempts by Smith to discover the status of the case, but

Hays would not respond to Plaintiff's attempts to obtain discovery requests and did

actively conceal the outstanding discovery requests from Smith for a period of

approximately six months. When Mr. Smith did finally learn of the discovery

requests, he promptly compiled and produced the discovery and notified Hays of its

completion within 26 days.

27. Not only did Hays not properly notify Mr. Smith of the discovery requests, he also, as

Smith discovered later, did file a motion to the Court requesting to extend the

scheduling order Sixty days (60) because his stated reason being that his client, had

not provided answers to the written discovery requests. Mr. Hays stated this to the

court even though when he wrote those words, Mr. Hays knew that he had never

given the discovery requests to Mr. Smith, and Smith was not aware of the existence

of any discovery requests.

28. Mr. Smith did produced and deliver the discovery documents to Hays, but Hays

failed to serve the documents on or to the Defendants.

29. After the discovery period ended per the Courts Scheduling Order, Mr. Hays did,

without any notice to Mr. Smith, file a motion to withdraw. The Court allowed Mr.

Hays to withdraw, and Hays did abandon the case.

30. The Defendant's Counsel then filed a motion to dismiss on August 15, 2023, and

throughout the motion did make false, incendiary statements about the Plaintiff, to

the Court some of which are included below as an example:

   a.   Page 2. Paragraph 4. Sentence 1. *"Plaintiff failed to respond to the discovery*

   *requests"*

    b. Page 3.Paragraph 6. Sentence 1. *"Plaintiff has failed and refused to provide the discovery responses or sit for a deposition."*

    c. Page 4.Paragraph2. Sentence 1. *"Plaintiff willfully failed to respond to the discovery requests, willfully failed to attend his deposition."*

    d. Page 5. Paragraph 2. Sentence 3. *"Refusal to even cooperate with his own counsel"*

    e. Page 5. Paragraph 2. Sentence 3. *"can be explained as nothing but a conscious and willful decision to ignore his obligations under the Federal Rules of Civil Procedure."*

These excerpts are but a few of the outrageous and false statements made by Defendants Counsel to the Court.

31. At the time, Mr. Smith was not aware of the motion to dismiss or any other Federal Court documents as Smith did not have access to the Courts electronic filing system, and was not aware of PACER website.

32. Mr. Smith attempted to obtain new Counsel, and did consult with and/or contacted thirteen law firms and/or Lawyers.

33. After reviewing the facts and evidence, the Lawyers that Smith contacted were eager to take the take the case, but upon communication and/or inquiry with Defendant's Counsel, the Lawyers in almost every instance (some had conflicts) would immediately decline to take the case.

34. At that time the reason for the seemingly duplicated declination by the various attorneys was unknown to Plaintiff, but because of a deadline that the Court had ordered for Mr. Smith to obtain new Counsel, Plaintiff Galahad Smith was forced to

make the decision to proceed Pro se.  On October 18, 2023 Plaintiff Galahad Smith

did file with the court his notice of appearance as Plaintiff Pro se.

35. Mr. Smith did make oral arguments to the Court on December 5, 2023 in opposition

to the motion to dismiss. At the hearing, Smith did confront and call out Defense

Counsel before the Judge regarding the falsity of the statements made in the motion,

but Defendant's Counsel indicted verbally to the Court that Mr. Smith's former

Counsel told him those things. Judge Jerusha Adams did believe the Defense

attorney and stated at the hearing as directly quoted from the transcript *"but I need*

*you to understand that Attorney Premo was relying on the representations from your*

*former attorney just as you were. So it's inappropriate to claim that Attorney Premo*

*made false statements against you when the falsity is something he would not know."*

Smith did call out Defendant's Counsel, regarding the false statements two more

times at meetings with the Lawyer, (not in the setting of a Judicial Proceeding) at

which in each instance, the Defendant's Counsel did state the same thing, that

Smith's Former Counsel told him the false statements.

36. Mr. Smith defeated the motion to dismiss. In the Opinion, which has now been

published by Casetext as case law, the Judge did state the following: *"It is undisputed*

*that any delay or deficiency in responding to discovery was not due to any dilatory or*

*otherwise sanctionable action by Plaintiff himself. The uncontradicted evidence*

*before this court establishes that Plaintiff's attorney was the sole cause of the failures*

*to comply with discovery,"*

37. Mr. Smith did actively prosecute the case during the next year (2024), and the court ordered mediation and did appoint attorney Paul Evans to assist Smith in the mediation.

38. At the Mediation, the Magistrate Judge who was conducting the mediation, told Smith that it was likely that summary judgment would be granted only because Mr. Smith had labeled the fraud incorrectly. Mr. Smith had labeled and argued the fraud as "fraud in the inducement", but it should have been called "Promissory Fraud". After the Magistrate Judge consulted with the Defendants, She further stated to the Plaintiff that it was also likely that the defendant's would file for recovery of attorney's fees or expenses, that could be in excess of fifty thousand dollars.

39. Based on this information, Plaintiff felt forced and coerced to settle, which he did, and for an amount so small that it did not cover any of his damages, because he'd had more costs and expenses just in the lawsuit alone, than he received in settlement.

40. The case was dismissed on December 30, 2024.

41. On August 19, 2024, Smith did file a complaint in Alabama Circuit Court against his former Counsel with the cause of action allowed by Code of Ala. § 6-5-573 "Legal Service Liability Action".

42. Smith has now obtained direct proof and evidence through discovery in the currently ongoing case (Galahad Smith Vs. The Hays Law Firm LLC) against his former Counsel that the Defendant's Counsel in the Trustmark case DID KNOW that the disparaging and slanderous statements made to the Court via the "Motion to Dismiss" were false.

a. Smith received in discovery a copy of an email from Hays to Trustmark's Defense Attorney that states in relevant part, *"I have the discovery it's pretty voluminous and I'm trying to figure out the best way to get it to you."*

b. Also received in discovery an email that stated in relevant part *"I'm free for a depo any day except the week of August 7."*

c. In a recent deposition, Smith asked his former Counsel Hays directly if he told Trustmark's Counsel those false statements specifically that Smith refused to produce discovery, and Smith refused to sit for a deposition, and when asked, Hays stated adamantly, under sworn oath that he never said those things to Trustmark's Counsel, and went on to say that he would never have said anything like that.

43. Also in the discovery process and since the commencement of the current ongoing lawsuit against Hays Law Firm, Smith has learned that the reason that some attorneys, (the full extent is unknown at this time, but Plaintiff Galahad Smith knows of at least two attorneys) declined to represent him, was because the Defendants' Counsel did verbally disseminate the false statement to said attorneys that Smith was uncooperative, refused to produce discovery, and refused to sit for a deposition. Smith now knows that this is the reason that some attorneys did decline to represent him. The false statements made by Trustmark's Attorneys did harm Smith's reputation and did taint the case to the extent that no lawyer wanted to touch it.

44. Now, it must be stated that Plaintiff Galahad Smith is fully aware that false statements made in a judicial proceeding may or may not be protected by absolute

privilege; however, knowingly false statements resulting in harm, made to third parties outside a judicial proceeding, while Defendant Trustmark might argue are protected by "qualified privilege", are legally not protected at all. The Alabama Supreme Court has been consistent in holding that knowingly false statements made to third parties, whether said parties have an interest or not, are NOT PROTECTED when the statements were made with "MALICE". This Plaintiff hereby states unequivocally that He is stating that Defendant's did act with MALICE in making the false statements to the attorneys that Smith was attempting to retain, because they knew the statements were false when they made them.

45. On July 21, 2025 a report was obtained by Smith, which was compiled and drafted by former Alabama Supreme Court Justice Thomas A. Woodall. Mr. Woodall stated that after reviewing the evidence, Mr. Hays, of the Hays law firm did indeed breach the applicable standard of care. An excerpt from said report is included here in relevant part, *"In representing Smith, Hays had the obligation to meet the standard of care required of lawyers handling litigation for a client. That standard of care includes acting with reasonable diligence and promptness. See Ala. R. of Prof. Conduct 1.3 (comment). It also includes keeping the client reasonably informed of the status of the litigation and promptly complying with reasonable requests by the client for information. See Ala. R. of Prof. Conduct 1.4. In my opinion, Hays failed to meet this standard of care."*

## COUNT ONE DEFAMATION

46. The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

47. Plaintiff was in the middle of a lawsuit against a party who had caused significant damages to Plaintiff

48. Plaintiff attempted to retain Counsel to represent him in this matter.

49. One or more of Defendant Trustmark National Bank's Defense Counsel, acting within the line and scope of their employment as agents and representatives of Trustmark, intentionally made "knowingly" false verbal statements to one or more of the attorneys with whom Plaintiff was engaged in negotiations with.

50. The untrue, slanderous statements were made with "malice", therefore all immunities under "qualified privilege" are removed, and Defendant's may not maintain such a defense.

51. The attorneys did decline to represent Plaintiff Smith because of the false and slanderous statements; after all, what attorney would want to represent someone who they were told "refused to produce discovery" and "refused to sit for a deposition"?

52. As a result of being unable to retain counsel, Plaintiff Smith was forced to settle for only a pittance of the amount of his damages. Therefore Plaintiff has been significantly harmed by being unable to recover his damages.

53. Trustmark Bank, in accord with Code of Ala. § 6-11-27, did ratify said wrongful conduct after it occurred, and furthermore, the wrongful conduct was intended for

and did benefit Defendant Trustmark National Bank. Therefore Defendant

Trustmark National Bank is liable under the doctrine of respondeat superior.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against

Defendants in an amount exceeding the minimum jurisdictional threshold of

this Court, for all types of Compensatory Damages (including mental anguish

or emotional distress), Punitive Damages, Court Costs, Attorney's Fees, and

such other and further relief as a Jury may award and this Court may deem

just and proper.

## COUNT TWO TORTIOUS INTERFERENCE

54. The allegations of all prior paragraphs are incorporated herein as though set forth again in full.

55. Plaintiff was attempting to obtain new Counsel to represent him in the ongoing (at the time on or about the end of August 2023) lawsuit against Trustmark National Bank. Plaintiff had a prospective economic advantage.

56. Trustmark knew about the prospective economic advantage.

57. Defendant Trustmark and its Counsel purposefully and unjustly and maliciously interfered with and did disrupt the relationship and prospective economic advantage by making unlawful statements to the prospective counsel, causing said prospective counsel to decline to represent Plaintiff.

58. Damages resulted from the unjust interference because Plaintiff Smith was unable to retain counsel and ultimately was forced to settle and dismiss the case for an amount that was far short of recovering his damages because of lack of counsel.

59. All allegations made in these claims are well documented with admissible evidence.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against

Defendants in an amount exceeding the minimum jurisdictional threshold of

this Court, for all types of Compensatory Damages, Punitive Damages, Court

Costs, Attorney's Fees, and such other and further relief as a Jury may award

and this Court may deem just and proper.

## COUNT THREE FRAUD

60. The allegations of all prior paragraphs are incorporated herein as though set forth

again in full.

61. Defendant Trustmark Bank, and through its representatives, did make a false

representation of an existing material fact to the Plaintiff. The false representation

was that the slanderous false statements made to the Court AND to third parties

(attorneys) in conversations in which privilege did not exist, were made

UNKNOWINGLY of their falsity, and that Plaintiff's former Counsel told them these

things. (see i.d. ¶51) This has been now proven to be not true by evidence obtained

in the lawsuit against Plaintiff's former Counsel.

62. The defendants knew the representation was false and made it recklessly, and

without regard to its truth or falsity.

63. The Plaintiff reasonably relied on the representation by signing a release.

64. Plaintiff was damaged as a proximate consequence of his reliance by not being able

to recover his damages. Instead of settling, Plaintiff would have filed an immediate

defamation complaint at the time had he known the truth.

pg. 14

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against

Defendants in an amount exceeding the minimum jurisdictional threshold of

this Court, for all types of Compensatory Damages, Punitive Damages, Court

Costs, Attorney's Fees, and such other and further relief as a Jury may award

and this Court may deem just and proper.

## COUNT FOUR CIVIL CONSPIRACY

65. The allegation of all prior paragraphs are incorporated herein as though set forth
again in full.

66. Defendant Trustmark National Bank did with and through its representative
Lawyers, conspire and agree to disseminate false statements to third parties
(slander), to unjustly interfere with Plaintiff's potential economic advantage
(tortious interference), and to commit fraud. (fraud in the inducement).

67. As a result a lawful and/or unlawful end was achieved by unlawful means.

68. An overt, unlawful act was committed by one or more of the conspirators, as
described herein. (these individuals will be substituted for "Fictitious Defendants
A,B, & C as soon as the true identity is determined.)

69. Plaintiff was damaged as a result of the actions and conspiracy by being unable to
retain counsel to recover his damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against

Defendants in an amount exceeding the minimum jurisdictional threshold of

this Court, for all types of Compensatory Damages, Punitive Damages, Court

Costs, Attorney's Fees, and such other and further relief as a Jury may award

and this Court may deem just and proper.

Galahad Smith- Plaintiff Pro se
galahad@southlandbuilders.net
P.O. Box 752
Greenville, AL  36037
(334) 657-9057

****JURY TRIAL DEMANDED****

**Plaintiff Requests that Defendant be served by Certified Mail at:**

TRUSTMARK NATIONAL BANK
CT CORPORATON SYSTEM
2 NORTH JACKSON ST. SUITE 605
MONTGOMERY, AL  36104

pg. 16