**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **GALAHAD SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 2:25-cv-969-ECM-CWB** |
| **TRUSTMARK NATIONAL BANK,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Galahad Smith, proceeding *pro se*, filed this action on August 25, 2025 to assert claims against Trustmark National Bank.  (*See* Doc. 1).  According to Trustmark, however, the claims being asserted in this action were released by Smith as part of a settlement in prior litigation. (*See* Doc. 5).  Upon careful review and consideration, the Magistrate Judge agrees and thus will recommend that this action be dismissed with prejudice.

## I.    Procedural History

Smith and Trustmark previously were parties to litigation in this district that was docketed as 2:22-cv-330-RAH-JTA.[1]  That action arose out of allegations surrounding the conversion of a construction loan into permanent financing during the year 2020.  The official record from the prior action reflects that the parties' mediated on December 9, 2024 and filed a joint stipulation of dismissal on December 27, 2024 such that a dismissal was entered with prejudice "on the terms agreed to and set out by the parties."

---

[1] The court takes judicial notice of the record in the prior proceedings.  *See* Fed. R. Evid. 201(b)(2); *see also Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (affirming judicial notice of documents publicly filed in legal action); *Thomason v. Alabama Home Builders Licensure Bd.*, No. 2:19-cv-873, 2022 WL 1252378, at *1 (M.D. Ala. Apr. 27, 2022) ("Taking judicial notice of filings and orders in a previous action is authorized … .") (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1279 (11th Cir. 1999)).

This action was filed approximately eight months later. (*See* Doc. 1). In the Complaint, Smith walks through the factual and procedural history of the original litigation—including the settlement and corresponding dismissal. (*Id*. at p. 9, ¶¶ 37-40). The Complaint then purports to craft four legal claims arising out of that background: (1) that Trustmark and its counsel defamed Smith during the original litigation by making false statements to other counsel who were considering whether to represent him; (2) that Trustmark and its counsel interfered with the relationship between Smith and such prospective counsel; (3) that Trustmark and its counsel engaged in fraud by making false statements to Smith about the litigation; and (4) that Trustmark conspired with unnamed others to engage in the aforementioned conduct. (*Id*. at pp. 12-15).

## II.    Jurisdiction

The record reflects that Smith is a citizen of Alabama (*see* Doc. 31 at p. 2) and that Trustmark is a citizen of Mississippi (*see* Doc. 29 at p. 2). The record further reflects that the amount in controversy more likely than not exceeds $75,000.00 exclusive of interest and costs. (*See* Doc. 1 at p. 2, ¶ 4). The court therefore finds that it possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). No challenge has been made to personal jurisdiction, and the allegations in that regard are sufficient. Venue is proper after transfer from the United States District Court for the Southern District of Alabama. (*See* Docs. 11 & 12).

## III.    Legal Standard

To survive a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The standard for such a motion was explained in *Twombly* and refined in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009):

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.

*Iqbal*, 556 U.S. at 678-79 (citations and internal edits omitted).

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Id.* at 680; *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Following the Supreme Court's approach in *Iqbal*, we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the court to assume the veracity of well-pleaded factual allegations and to determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack v. City of High Springs*, 486 F. App'x 3, 6 (11th Cir. 2012) (citation omitted). Again, establishing facial plausibility requires more than stating facts that establish a mere possibility. *Mamani*, 654 F.3d at 1156 ("The possibility that—*if* even a possibility has been alleged effectively—these defendants acted unlawfully is not enough for a plausible claim.") (emphasis in original). Plaintiffs instead are required to "allege more by way of factual content to nudge [their] claim[s] … across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (internal editing and citation omitted).

The court must accept all the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284

3

(11th Cir. 2008).  The court need not, however, accept as true any legal conclusions couched in the form of factual allegations.  *See Diverse Power, Inc. v. City of LaGrange, Ga.*, 934 F.3d 1270, 1273 (11th Cir. 2019) (citing *Twombly*, 550 U.S. at 555).  And though *pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys," *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006), a court does not have "license ... to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action," *GJR Invests. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 556 U.S. 662.

## IV.    Discussion

Trustmark contends that a dismissal under Rule 12(b)(6) is warranted because Smith "released the claims in the Settlement Agreement" and because Smith's claims "are barred by res judicata."  (*See* Doc. 5 at p. 2; *see also* Doc. 5-4).[2]

When litigation is resolved through settlement and dismissed with prejudice, principles of release and *res judicata* combine to shape the contours of a party's ability to bring claims in the future. *See Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285 (11th Cir. 2004).  "A judgment dismissing an action with prejudice based upon the parties' stipulation, unlike a judgment imposed at the end of an adversarial proceeding, receives its legitimating force from the fact that the parties consented to it."  *Id*. at 1288.  Therefore, "the principles of *res judicata* apply (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint."  *Id*.   In determining whether settling parties intended *res judicata* effect to attach to a specific claim, "the court should use principles of contract interpretation, because a settlement is essentially a contract."  *Id.* at 1289; *see also id*. ("The best evidence of that intent is, of course, the settlement agreement itself.").

---

[2] The court need not reach Trustmark's "litigation privilege" argument.

The relevant portion of the settlement agreement between Smith and Trustmark provides as follows:

4. **Smith's Release**. In consideration of the mutual covenants contained herein and for other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, Smith, for himself and each of his present and former heirs, executors, administrators, partners, co-obligors, co-guarantors, guarantors, sureties, family members, spouses, attorneys, insurers, agents, representatives, predecessors, successors, assigns and all those who claim through them or could claim through them **(collectively Releasors) unconditionally and irrevocably remise, waive, satisfy, release, acquit, and forever discharge Crenshaw and Trustmark** and its present, former and future parents, predecessors, successors, assigns, assignees, affiliates, subsidiaries, divisions, departments, subdivisions, owners, partners, principals, trustees, creditors, shareholders, joint ventures, co-venturers, officers and directors (whether acting in such capacity or individually), attorneys, vendors, accountants, nominees, agents (alleged, apparent or actual), representatives, employees, managers, administrators, and/or each person or entity acting or purporting to act for or on behalf of Defendants, as well as any past, present or future person or any entity that held any interest in the Construction Loan or Permanent Loan (collectively Releasees), and each of them respectively, **from and against any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, setoffs, costs, losses, controversies, agreements, promises and demands, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, arising at law or in equity, by right of action or otherwise**, including, but not limited to, suits, debts, accounts, bills, damages, judgments, executions, warranties, attorneys' fees, costs of litigation, expenses, claims and demands whatsoever **that Releasors**, or their attorneys, agents, representatives, predecessors, successors and assigns, **have against Releasees, for, upon, or by reason of any matter, cause or thing, whatsoever, in law or equity**, including, without limitation, the claims Smith made or which he could have made arising from the origination or servicing of the Construction Loan and/or the Permanent Loan as well as in any way related to the Property, any servicing act or omission thereon as well as any claim or issue which was or could have been brought in the Litigation (collectively, the Released Matters). In addition, **Smith covenants not to sue Defendants or any other person or entity, for any claim Smith [has] or may have had as of the Effective Date, relating to or arising out of** the Construction Loan, the Permanent Loan, the Property, **the Litigation**, or the matters mentioned in the recitals herein.

5. **Release of Unknown Claims**. Smith acknowledges that he may hereafter discover facts different from, or in addition to, those which he now claims or believes to be true with respect to the claims released herein, **and agree[s] that this agreement shall remain effective in all respects notwithstanding the discovery of such different or additional facts**. Smith expressly waives any right to assert

hereafter that any claims were excluded from this agreement through ignorance, oversight, error, or otherwise.  Smith agrees that this paragraph constitutes a waiver of any statutory provision, right or benefit of any state or territory of the United States or any jurisdiction, and any principle of common law, at law or in equity, that prohibits the waiver of unknown claims.

(Doc. 5-4 at pp. 3-5) (emphasis added).[3]  Such unambiguous language confirms that the parties indeed intended preclusive effect to apply to such claims as those now at issue.  *See Norfolk*, 371 F.3d at 1290 ("[T]he court should have looked to the Settlement Agreement to determine what claims it precluded from future litigation.").

The settlement agreement expressly states that Smith "unconditionally and irrevocably remise[d], waive[d], satisf[ied], release[d], acquit[ted], and forever discharge[d]" Trustmark "from and against any and all past and present claims, counterclaims, actions, defenses, affirmative defenses, suits, rights, causes of action, lawsuits, setoffs, costs, losses, controversies, agreements, promises and demands, or liabilities, of whatever kind or character, direct or indirect, whether known or unknown or capable of being known, arising at law or in equity, by right of action or otherwise."  (*See* Doc. 5-4 at pp. 3-4, ¶ 4).  The settlement agreement then went on to

---

[3] In ruling on a 12(b)(6) motion, a court is permitted to consider allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.  *See Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir. 2024); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] court may consider a document attached to a motion to dismiss ... if the attached document is (1) central to the plaintiff's claim and (2) undisputed.  In this context, 'undisputed' means that the authenticity of the document is not challenged. ... [A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement[.]") (citation omitted). Although the dismissal arguments raised by Trustmark are in the nature of affirmative defenses, they nonetheless may be presented in a motion to dismiss because they clearly appear on the face of the complaint. *See Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd on reh'g en banc*, 764 F.2d 1400 (11th Cir. 1985).  Here, the Complaint filed by Smith specifically references the parties' prior litigation, the mediated settlement, and the corresponding dismissal. Trustmark in turn has attached a copy of the actual settlement agreement, and the authenticity of the settlement agreement has not been challenged.

clarify that its broad application would include "any claim Smith [has] or may have had as of the Effective Date, relating to or arising out of … the Litigation." (*See id*.).  And the preclusion was intended to apply "notwithstanding the discovery of [any] different or additional facts." (*See id*. at p. 4, ¶ 5).  Put more simply, Smith agreed to give up all claims against Trustmark for all conduct occurring prior to the effective date of the settlement agreement.[4]  *See In re White-Lett*, No. 24-13915, 2025 WL 3552844, at *6 (11th Cir. Dec. 11, 2025) ("It is well established that a settlement agreement may include a release that bars a party to the settlement from raising certain claims.") (citing *In re Managed Care*, 756 F.3d 1222, 1235 (11th Cir. 2014)).  Because all factual allegations in the Complaint involve conduct that took place during the prior litigation, all claims arising from those allegations could have been brought as of the effective date of the settlement agreement and are conclusively barred.  *See Sherrod v. Sch. Bd. of Palm Beach Cnty.*, 550 F. App'x 809, 813 (11th Cir. 2013) (affirming dismissal where action as "barred by the settlement agreement [the plaintiff] signed.").[5]

## V.   Other Pending Matters

Smith has various motions pending for resolution, including several motions to amend. The first motion seeks to add claims against Trustmark's lawyers for defamatory statements made about Smith to prospective new counsel during the original litigation. (*See* Doc. 17).  Because any such claims would have existed as of the effective date of the settlement agreement, and because

---

[4] The "Effective Date" of the settlement agreement was defined as "the last date identified on the signature page."  (*See* Doc. 5-4 at p. 2).  The settlement agreement was executed by Smith on December 11, 2024 and by the other parties, including Trustmark, on December 12, 2024.  All conduct referenced in the Complaint occurred prior to that later date.  (*See* Doc. 1).

[5] It should be noted that Smith designated the defendant as Trustmark National Bank, but the entity appearing in this action is Trustmark Bank as successor by conversion to Trustmark National Bank. (*See* Doc. 5 at p. 1, n.1).  Because the settlement agreement extended to Trustmark's "successors" (*see* Doc. 5-4 at p. 3, ¶ 4), the distinction makes no difference.

the settlement agreement included Trustmark's attorneys as released parties (*see* Doc. 5-1 at p. 3, ¶ 4), the purported claims are conclusively barred—rendering the proposed amendment futile. *See Lee v. Alachua Cnty. Fla.*, 461 F. App'x 859, 860 (11th Cir. 2012) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.") (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (per curiam)) (internal quotation marks omitted); *see also Sealey v. Jones Walker LLP*, No. 2:19-cv-280-MHT-JTA, 2020 WL 2761035, at *6 (M.D. Ala. May 8, 2020) ("There would be no purpose here in permitting Sealey to file an amended complaint because it is well settled in the Eleventh Circuit that amendment is futile when an action is barred by res judicata.") (citations omitted), *report and recommendation adopted*, No. 2:19-cv-280-MHT, 2020 WL 2748480 (M.D. Ala. May 27, 2020).

Smith's second motion to amend seeks to assert not only claims against Trustmark's lawyers for conduct occurring during the prior litigation but also entirely new claims against a variety of new parties involving a recently noticed foreclosure sale. (*See* Docs. 21 & 25). The property at issue, however, is different from the property underlying Smith's dispute with Trustmark, and the claims are targeted against the lender and lawyers/law firms involved with the unrelated foreclosure. The amendment also would include new claims against Smith's original counsel, along with the insurance carrier and defense counsel involved in Smith's malpractice claim against that counsel. Such claims fall far outside the joinder framework contemplated by Rule 20 of the Federal Rules of Civil Procedure: the amendment does not assert "any right to relief … against [the defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences;" nor does it set out "any question of law or fact common to all defendants." *See* Fed. R. Civ. P. 20(a)(2).

## VI.    Conclusion

For the reasons stated above, the Magistrate Judge hereby **RECOMMENDS** as follows:

- that the pending Motion to Dismiss Complaint (Doc. 5) be granted such that this action is dismissed with prejudice; and

- that all other pending motions (Docs. 9, 14, 17, 21, 23, 25, 32, 33, & 34) be denied as moot.

It is **ORDERED** that all objections to this Recommendation must be filed no later than **July 15, 2026**. An objecting party must identify the specific portion(s) of factual findings/ legal conclusions to which objection is made and must describe in detail the basis for each objection. Frivolous, conclusive, or general objections will not be considered.

After receiving objections, the District Judge will conduct a *de novo* review of the challenged findings and recommendations. The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings. *See* 28 U.S.C. § 636(b)(1)(C). A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations. The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 1st day of July 2026.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**

9